THOMASINE F. SMITH, Employee-Plaintiff v. HOUSING AUTHORITY OF ASHEVILLE, Employer-Defendant, Self-Insured

No. COA02-1138

(Filed 15 July 2003)

## 1. Workers' Compensation— injury by accident—psychological disorder—investigation of claim

The Industrial Commission did not err in a workers' compensation case by concluding that plaintiff employee's psychological disorder was not the result of an injury caused by an accident arising out of and in the course of her employment with defendant, but was the result of the investigation of her claim for that injury or from perceived workplace retaliation for her injury.

## 2. Workers' Compensation— psychological disorder—investigation of claim not an accident

The Industrial Commission did not err in a workers' compensation case by concluding as a matter of law that plaintiff employee's psychological disorder was not compensable, because: (1) although an accident occurred, the Commission found the investigation thereof caused plaintiff's mental injury; and (2) the investigation into the accident cannot be considered an accident as it is not an unlooked for and untoward event involving the interruption of the routine of work and the introduction thereby of unusual conditions likely to result in unexpected consequences.

Appeal by plaintiff from an opinion and award entered 17 April 2002 by the North Carolina Industrial Commission. Heard in the Court of Appeals 22 May 2003.

*Bailey and Bailey, by J. Todd Bailey, and Gum & Hillier, P.A., by Patrick S. McCroskey, for plaintiff-appellant.*

*Root & Root, P.L.L.C., by Louise Critz Root, for defendant-appellee.*

## SMITH v. HOUSING AUTH. OF ASHEVILLE

[159 N.C. App. 198 (2003)]

CALABRIA, Judge.

Thomasine F. Smith ("plaintiff") appeals the opinion and award of the North Carolina Industrial Commission ("Commission") finding plaintiff's psychological disorder was not the result of an injury caused by an accident arising out of and in the course of her employment with the Housing Authority of Asheville ("defendant"), but was "the result of the investigation of her claim for that injury or from perceived workplace retaliation for her injury." The Commission concluded as a matter of law "[p]sychological injuries resulting from legitimate personnel action, including investigation of workers' compensation claims generally are not compensable under the Workers' Compensation Act." For the reasons stated herein, we affirm.

The Commission found the following facts pertinent to this appeal. Plaintiff was fifty-four years old, and had worked for defendant for twenty-four years when, on 17 April 1997, plaintiff was injured by an accident at work. When plaintiff was returning from lunch, she discovered her new chair had arrived and was in her cubicle.

> 5. . . . When she sat in the chair, it rolled out from under her and plaintiff landed on the floor. She was not seriously injured or knocked unconscious. Her co-workers helped her up. Plaintiff was not visibly shaken and actually laughed at herself. She complained only of some neck pain and later about her knee.

Plaintiff was treated by a doctor for her minor physical injuries.

> 9. Within a week of the accident, plaintiff had a difficult interaction with William Wynn, the safety coordinator for the Asheville Housing Authority. Mr. Wynn had instituted a program to improve workplace safety. When he heard about plaintiff's accident, Mr. Wynn spoke with plaintiff about her accident report. Plaintiff apparently believed that Mr. Wynn was accusing her of filing a lawsuit against the Housing Authority and she became upset. Renee Crane, a co-worker overheard the conversation and stated that Mr. Wynn was somewhat arrogant in his manner, but, that she did not recall Mr. Wynn stating that a suit was filed. Ms. Crane explained that plaintiff became upset and did not understand what Mr. Wynn was saying. This encounter with Mr. Wynn was upsetting to plaintiff, and Ms. Crane reported it to Constance Proctor, her supervisor.

Thereafter, plaintiff continued to work "without any apparent difficulties." However, "[i]n August 1997, she developed a panic disorder"

and throughout the Fall she was treated for mental illness. Plaintiff was thereafter diagnosed as paranoid delusional, a permanent condition "anticipated to preclude plaintiff from employment." Dr. Anthony Sciara, Ph.D., a psychologist who has treated plaintiff since December 1997, testified and the Commission found the following:

> 17. . . . Although Dr. Sciara stated that plaintiff's paranoid delusions were caused by the accident at work and the way it was handled by the employer, he was not able to explain how the accident (the fall in the new chair) caused the injury. Dr. Sciara explained that there was no evidence of a brain or other injury caused by the fall which would produce this condition and that her symptoms were not consistent with a traumatic head injury. In contrast, however, plaintiff was described by Dr. Sciara as a person with a significant moral structure who felt a need to follow the rules, perceived that her employer desired no lost day injuries at work, and that any accident at work would not be acceptable. Further, the perceived nature of the confrontation from Mr. Wynn accusing her of filing some type of legal action against the employer would significantly undermine her psychological stability and contribute to her decompression.

In finding of fact 21, the Commission gave greater weight to Dr. Sciara's testimony that the psychological condition was "the result of the investigation of her claim for that injury or from perceived workplace retaliation for her injury." Based on these facts, the Commission concluded that plaintiff's paranoid delusional disorder is not compensable. Plaintiff appeals.

Plaintiff asserts the Commission erred by: (I) failing to find her psychological impairment arose out of her employment because there is "no evidence" to support the conclusion that her disorder did not arise from her fall; and (II) failing to conclude as a matter of law that her mental injury is compensable.

This Court's review of workers' compensation cases is "limited to the consideration of two questions: (1) whether the Full Commission's findings of fact are supported by competent evidence; and (2) whether its conclusions of law are supported by those findings." *Calloway v. Memorial Mission Hosp.*, 137 N.C. App. 480, 484, 528 S.E.2d 397, 400 (2000). "This Court does not weigh the evidence and decide the issue on the basis of its weight; rather, this Court's duty goes no further than to determine whether the record contains any evidence tending to support the finding." *Devlin v. Apple Gold, Inc.*,

153 N.C. App. 442, 446, 570 S.E.2d 257, 261 (2002). "If there is competent evidence to support the findings, they are conclusive on appeal even though there is evidence to support contrary findings." *Boles v. U.S. Air, Inc.*, 148 N.C. App. 493, 498, 560 S.E.2d 809, 812 (2002). "The Industrial Commission's conclusions of law, however, are reviewable *de novo*." *Absher v. Thomas Built Buses, Inc.*, 156 N.C. App. 697, —— S.E.2d —— (2003).

I. Findings of Fact

[1] Plaintiff appeals asserting the Commission erred in findings of fact 17 and 21 because there was "no evidence" to support these findings. In finding of fact 17, set forth above, the Commission found that, although Dr. Sciara concluded "the incident" in April 1997 caused her illness, he could only explain how the investigation into the accident caused plaintiff's condition and he could not explain how the accident itself was the cause. Finding of fact 21 reads:

> Plaintiff has developed a paranoid delusional disorder. The greater weight of the competent evidence is that the paranoid delusional disorder is related to the employer's investigation of her claim for the April 17, 1997 injury, including plaintiff's perception of her employer's desire for no work injuries and perceived retaliation for being injured on the job. The Commission gives greater weight to the testimony of Dr. Sciara that plaintiff's psychological condition was not caused by a traumatic injury to her head or other injury sustained in the fall. Plaintiff's psychiatric condition was not due to an injury by accident arising out of and in the course of her employment on April 17, 1997. Rather, this condition is the result of the investigation of her claim for that injury or from perceived workplace retaliation for her injury. Plaintiff has not established a psychological injury from an accident or untoward event.

Plaintiff's assertion that no evidence supports these findings is incorrect. When asked to describe how the April 1997 incident caused plaintiff's psychological demise, Dr. Sciara testified:

> What I can do is to give you the best understanding that I have of it; to say absolutely beyond a doubt this is what occurred, I'm not sure anybody can do.

> Ms. Smith is somebody with a significant moral structure in her own life, tries to follow all the rules, believes in doing the right thing, believes in taking absolute responsibility for herself,

somewhat perfectionistic in her orientation to what she does and has a true belief in kind of right and wrong, that if you do the right things then good things will happen to you.

The understanding that I have is that while she had been an employee at the Housing Authority and although it was stressful at times, she felt she was doing a good thing, felt that she was following all the rules of the agency. She indicated a significant awareness that there were to be no lost day injuries at work, that this was a significant thing that was focused on a lot by the Housing Authority and that people were admonished not to take a day off if they didn't have to. And, that any accident related lost work days just was not acceptable and that's what she understood. She felt then very guilty that because of what happened to her and even though she was in significant pain that she wanted to take the day off and felt very coerced that she was to come to work.

It then began that she believed people were watching her to see if she was going to do anything against the Housing Authority and that began a psychological spiral from which she's not recovered.

As the Commission found, none of Dr. Sciara's explanation supports his conclusion that the patient's current psychiatric decomposition "is a direct result of her work related injury. . . ." Rather, Dr. Sciara referenced only the investigation in describing the cause of plaintiff's illness and further explained the confrontational investigation "would have significantly undermined her psychological stability. . . ." Accordingly, the testimony supports the Commission's finding that the investigation caused her mental illness. Although the evidence may have supported alternate findings, the Commission's findings are "conclusive on appeal" where they are supported by any competent evidence. Accordingly, we overrule plaintiff's assignment of error.

II. Conclusions of Law

[2] Plaintiff also asserts the Commission erred in concluding as a matter of law that her injury was not compensable.

We note that "as long as the resulting disability meets statutory requirements, mental, as well as physical impairments, are compensable under the Act." *Jordan v. Central Piedmont Community College*, 124 N.C. App. 112, 119, 476 S.E.2d 410, 414 (1996). Therefore,

the essential question is not whether a mental injury is compensable but rather whether the injury met the statutory requirements.

Although plaintiff argues "[t]his case does not present the claim of an individual who suffers mental injury merely as a result of an investigation," that is precisely the case the Commission found was presented. Although plaintiff asserted the Commission's findings were not supported by competent evidence, since Dr. Sciara's testimony supports the Commission's findings, these findings are conclusive on appeal. Accordingly, we must consider whether a mental injury resulting from an investigation into an accident, and not the accident itself, is compensable.

"[A]n injury is compensable under the North Carolina Workers' Compensation Act only if (1) it is *caused by an 'accident,'* and (2) the accident arises out of and in the course of employment." *Pitillo v. N.C. Dep't. of Envtl. Health & Natural Res.*, 151 N.C. App. 641, 645, 566 S.E.2d 807, 811 (2002) (emphasis added). "An accident under the workers' compensation act has been defined as ' "an unlooked for and untoward event which is not expected or designed by the person who suffers the injury,' " and which involves " 'the interruption of the routine of work and the introduction thereby of unusual conditions likely to result in unexpected consequences." ' " *Id.*, (quoting *Calderwood v. Charlotte-Mecklenburg Hosp. Auth.*, 135 N.C. App. 112, 115, 519 S.E.2d 61, 63 (1999) (quoting *Adams v. Burlington Industries, Inc.*, 61 N.C. App. 258, 260, 300 S.E.2d 455, 456 (1983))); *see also Lovekin v. Lovekin & Ingle*, 140 N.C. App. 244, 248, 535 S.E.2d 610, 613 (2000) (discussing North Carolina's interpretation of the term "accident.") In *Pitillo*, this Court held plaintiff's mental illness was not caused by an "accident" where plaintiff required psychiatric treatment after a job performance review. *Pitillo*, 151 N.C. App. at 646, 566 S.E.2d at 812. Similarly, in the case at bar, although an accident occurred, the Commission found the investigation thereof caused plaintiff's mental injury. The investigation into the accident cannot be considered an "accident" as it is not "an unlooked for and untoward event" involving "the interruption of the routine of work and the introduction thereby of unusual conditions likely to result in unexpected consequences." Since the investigation is not an "accident," and the Commission found the investigation caused plaintiff's mental injury, we find the Commission properly determined plaintiff's injury is not compensable under the Workers' Compensation Act.

Affirmed.

Judges McGEE and McCULLOUGH concur.