THOMAS C. CLARK, Employee, Plaintiff v. CITY OF ASHEVILLE, Employer, SELF-INSURED (HEWITT COLEMAN AND ASSOCIATES, Servicing Agent), Defendant

No. COA03-120

(Filed 16 December 2003)

**Workers' Compensation— post-traumatic stress—fireman— abusive supervisor—driving test**

The Industrial Commission did not err by concluding that a workers' compensation plaintiff's post-traumatic stress disorder, depression, and other psychological conditions did not develop and were not aggravated by causes and conditions characteristic of and peculiar to his employment as a firefighter. An abusive supervisor, an employment test, and a perceived demotion are not uncommon in the workplace.

Appeal by plaintiff from opinion and award filed 17 September 2002 by the North Carolina Industrial Commission. Heard in the Court of Appeals 12 November 2003.

*Gary A. Dodd for plaintiff-appellant.*

*William F. Slawter, PLLC, by William F. Slawter, for defendant-appellee.*

BRYANT, Judge.

Thomas C. Clark (plaintiff) appeals an opinion and award of the North Carolina Industrial Commission (the Commission) filed 17 September 2002 denying his workers' compensation claim.

On 13 May 1999, plaintiff filed a Form 18 with the Commission alleging he had suffered an occupational disease, post-traumatic stress disorder, after failing a required driving test and being told he could no longer drive fire trucks for the city. Plaintiff's employer, the City of Asheville, denied his claim, and plaintiff requested a hearing before the Commission.

In its 17 September 2002 opinion and award, the Commission found as fact that:

1. Plaintiff is 52 years of age . . . . He completed high school. Plaintiff served in the Army from 1969-71, completing two tours of duty in Vietnam, with an honorable discharge in 1971. Plaintiff had combat duty, patrol duty and prisoner of war camp assignment while in Vietnam. While in Vietnam, plaintiff was exposed to violence and death.

2. Plaintiff began working with the Fire Department of the City of Asheville in 1973 and continued working there until he retired December 1, 1998. . . . Prior to May 1998, [p]laintiff had been trained and given the additional duty of driving the fire trucks. He had been driving the fire truck for about 20 years.

3. At the time that [p]laintiff began driving fire trucks, around 1978, the position of fire truck driver was not a specific, designated position. Firefighters would share this duty, and there was no additional pay. Previously, the driver position had been a promotional position and firefighters were required to pass a test.

4. In the spring of 1998, there were 39 firefighters who were also assigned as drivers, of which five had been tested and promoted into the driver position. At that time, the City determined that the position of truck driver would be changed back to a separate promotional position. A firefighter would be required to pass a hands-on test to qualify as a driver. Plaintiff and all the other fire-

fighters were notified of this change. Anyone who wished to drive the truck, including the existing drivers, would be required to take and pass the test in order to keep driving. The only exception was for the five drivers who had previously taken and successfully completed the driving test and had been promoted to the designated position [in the past].

5. In May 1998, 62 firefighters, including [p]laintiff, took the test to qualify as drivers. Of those, 41 passed and 21 did not pass. Of the 21 who did not pass, 9, including [p]laintiff, were already assigned drivers. As a result of the test, those who were assigned drivers who did not pass[] would no longer be assigned to drive on a regular basis, but would work as relief drivers. There was no demotion involved, and there was no reduction in pay, but there was a change of duty assignment. All drivers who did not pass the test were given an opportunity to challenge the test results, which [p]laintiff chose not to do.

6. Plaintiff has a long history of treatment for post-traumatic stress disorder (PTSD), caused by his combat experience in Vietnam. He has a ten percent service connected disability through the Veterans Administration [(V.A.)] related to his PTSD. Plaintiff showed signs of a stress disorder shortly after returning from Vietnam . . . . As early as 1986, he reported to the V.A. [m]edical staff that he was having dreams about Vietnam. At that time, he was also having difficulties in his first marriage, problems with anger, and was expressing suicidal thoughts.

7. . . . [B]y March 1995, [plaintiff] had been assessed with PTSD and depression of several years duration. . . .

. . . .

10. At the time he took the driver's test in May 1998, [p]laintiff had many personal stressors in his life and an extensive history of mental health treatment for depression, PTSD, and anger management.

11. The position of firefighter may be considered inherently dangerous and exposes firefighters to many traumatic events not usually witnessed by the general public . . . . The evidence in this case, however, fails to show that such events were factors significantly contributing to [p]laintiff's psychological problems, including PTSD, depression and anger.

CLARK v. CITY OF ASHEVILLE

[161 N.C. App. 717 (2003)]

12. After [p]laintiff was notified that he did not pass the driver's test, [p]laintiff became extremely angry. He called his employee assistance plan and was referred to Dr. Phillip Ellis, a psychologist . . . , who [p]laintiff then saw . . . for crisis intervention. Plaintiff expressed his anger at not passing the test and viewed the situation as a demotion. He was particularly upset with the [f]ire [c]hief . . . .

13. Having reviewed and considered the testimony of [the examining psychologists], the . . . Commission finds that [p]laintiff's post-traumatic stress disorder . . . resulted from his service during the Vietnam War and that his condition, combined with his personality type, led to extreme anger and potential violence when dealing with stresses of life such as marital, family, and relationship problems. He had a similar reaction to the driver's test and his relationship with the fire chief. To his credit, he recognized the potential for violence and sought help . . . .

. . . .

15. Failing an employment test and perceiving demotion are not uncommon circumstances in the workplace.[1] Such occurrences are not characteristic to employment as a firefighter, and employment as a firefighter does not increase one's risk of experiencing stress as a result of failing a test or perceiving demotion. Neither [p]laintiff's PTSD nor his mental state in dealing with the driver's test or the [fire] chief were the result of any traumatic event or events characteristic of employment as a firefighter.

16. After May 1998, [p]laintiff returned to light duty work . . . until December 1, 1998, when . . . he went out of work on retirement status.

Based on these findings, the Commission concluded plaintiff's post-traumatic stress disorder, depression, and other psychological condition did not develop and was not aggravated by causes and conditions "characteristic of and peculiar to his employment" as a firefighter.

The dispositive issue is whether plaintiff's post-traumatic stress disorder or aggravation thereof was due to causes and conditions "characteristic of and peculiar to" his employment.

---

1. Plaintiff did not assign error to this finding of fact. Thus, it is "deemed supported by competent evidence." *In re Padgett*, 156 N.C. App. 644, 648, 577 S.E.2d 337, 340 (2003).

In his brief to this Court, plaintiff contends that his claim for workers' compensation benefits rests on his inability to perform the duties of a firefighter due to the psychological reaction caused by the failed driving test and his perceived demotion and a comment by the fire chief, whom he now considered "the enemy," when plaintiff returned to light-duty work.[2]

An occupational disease is defined as "[a]ny disease . . . which is proven to be due to causes and conditions which are characteristic of and peculiar to a particular trade, occupation or employment, but excluding all ordinary diseases of life to which the general public is equally exposed outside of the employment." N.C.G.S. § 97-53(13) (2001). Our courts have recognized work-related depression or other mental illness to be a compensable occupational disease "as long as the resulting disability meets statutory requirements," *Jordan v. Central Piedmont Community College*, 124 N.C. App. 112, 119, 476 S.E.2d 410, 414 (1996), to establish that " 'the mental illness or injury was due to stresses or conditions different from those borne by the general public,' " *Smith-Price v. Charter Pines Behavioral Ctr.*, 160 N.C. App. 161, 168, 584 S.E.2d 881, 886 (2003) (citation omitted). Thus, a plaintiff has to show that his psychological condition, or the aggravation thereof, was (1) "due to causes and conditions which are characteristic of and peculiar to a particular trade, occupation or employment" and that it is not (2) an "ordinary disease[] of life to which the general public is equally exposed." N.C.G.S. § 97-53(13).

In this case, plaintiff is unable to meet the first requirement of this two-prong test. Plaintiff based his claim on the sole contention that the driving test and the fire chief's comment to him were the catapult for his post-traumatic stress disorder and other mental conditions. The giving of tests, however, is not "characteristic of and peculiar to" plaintiff's employment as a firefighter but can be expected in any work setting. N.C.G.S. § 97-53(13). Moreover, as our Supreme Court has acknowledged, working for an abusive supervisor, if this was indeed the case here, "can occur with any employee in any industry or profession." *Woody v. Thomasville Upholstery, Inc.*, 146 N.C. App. 187, 202, 552 S.E.2d 202, 211 (2001) (Martin, J., dissenting), *rev'd*, 355 N.C. 483, 562 S.E.2d 422 (2002) (per curiam based on the reasoning of Judge Martin's dissent). Accordingly, the Commission did not err in concluding that plaintiff's post-traumatic stress disorder, depression, and other psychological condition did

---

2. While plaintiff was working on a fire hydrant and was dirty and sweaty, the fire chief had walked over to him and said: "Hot day in Vietnam, isn't it?"

not develop and were not aggravated by causes and conditions "characteristic of and peculiar to his employment" as a firefighter because, as stated in finding of fact #15, "[f]ailing an employment test and perceiving demotion are not uncommon circumstances in the workplace." *See Smith v. Housing Auth. of Asheville*, 159 N.C. App. 198, 203, 582 S.E.2d 692, 695 (2003) (conclusions proper if supported by findings of fact); *Mann Contr'rs, Inc. v. Flair With Goldsmith Consultants-II, Inc.*, 135 N.C. App. 772, 775, 522 S.E.2d 118, 121 (1999) ("[t]he conclusions of law drawn . . . from [the] findings of fact are fully reviewable *de novo* by the appellate court"). As all other issues raised in plaintiff's brief to this Court are subordinate to this determination, we do not reach those issues.

Affirmed.

Judges McCULLOUGH and TYSON concur.